IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

DEMETRIUS COLEMAN,
PAMELA BROOKS,
DELANO PORCHIA
CAMILLE BRITTON, and
ADRAM PUCKETT

on behalf of themselves and all similarly
situated individuals,

    Plaintiffs,

vs.

PARALLON BUSINESS SOLUTIONS,
d/b/a/
HCA SHARED SERVICES FOR
PHYSICIANS

    Defendant.

No. _____

Judge _____

Jury Demand

## COMPLAINT

For their Complaint against Defendant Parallon Business Solutions d/b/a/ HCA Shared Services for Physicians ("Parallon" or "Defendant"), Plaintiffs Demetrius Coleman, Pamela Brooks, Delano Porchia, Camille Britton, and Adram Puckett, on behalf of themselves and all similarly situated individuals, (collectively "Plaintiffs") state:

### PARTIES

1.    Plaintiffs are citizens and residents of Davidson County, Tennessee, and former employees of Defendant.

1

2. Defendant is a Tennessee corporation with corporate headquarters located at 1 Park Plaza, Nashville, TN 37203. Its registered agent for service of process is C T Corporation System at 800 S. Gay Street, Suite 2021, Knoxville, Tennessee 37929. Defendant is licensed to do business in the State of Tennessee and is actively conducting business in the State of Tennessee with an office at 1 Park Plaza, Nashville, TN 37203. Defendant is, therefore, subject to personal jurisdiction in Tennessee for the purpose of this lawsuit.

3. Parallon operates its business in Tennessee and is a subsidiary of Healthcare Corporation of America ("HCA"). Parallon does business as HCA Shared Services for Physicians.

**JURISDICTION AND VENUE**

4. This is an action for declaratory and equitable relief and damages for employment discrimination, retaliation, and other employment violations brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"); 42 U.S.C. § 1981 ("Section 1981"); the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101, *et seq.* ("THRA"), the Tennessee Public Protection Act, Tenn. Code Ann. § 50-1-304 ("TPPA"), the Family and Medical Leave Act ("FMLA"), and common law of Tennessee. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1343(a)(4), and 1367(a). Venue is proper under 28 U.S.C. § 1391.

5. Plaintiffs have collectively met all conditions precedent to the filing of this Complaint under the charges asserted herein.

6. Plaintiffs Coleman and Brooks filed timely Charges of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff Coleman has received

2

Case 3:13-cv-00021   Document 1   Filed 01/11/13   Page 2 of 13 PageID #: 2

a Notice of Suit Rights from the EEOC. Additional Plaintiffs reserve the right to amend this Complaint to assert additional claims under Title VII. Plaintiff Brooks timely filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") on May 22, 2012, and the matter is currently under investigation. At Plaintiffs election, Plaintiffs will seek permission to amend this complaint to assert Title VII claims immediately upon receipt of the notice of suit rights from the EEOC for Charge No. 494-2012-01565. Other Plaintiffs will have satisfied all jurisdictional pre-requisites for Title VII claims by virtue of the facts that Brooks filed a claim with the EEOC on behalf of herself and all other similarly situated black employees of Defendant, including the other Plaintiffs.

7. Defendant discriminated and retaliated against Plaintiffs because of race and color in violation of the Title VII, THRA and Section 1981.

8. Plaintiff Coleman suffered adverse employment actions (retaliation) by Defendant in violation of the TPPA and Tennessee common law after her engagement in protected activity. Plaintiff Britton was (interfered with and) retaliated against in violation of the FMLA.

9. Defendant's conduct has harmed and caused damage to Plaintiffs'.

10. Defendant acted, and failed to act, intentionally and with malice or with reckless indifference to Plaintiffs' rights.

11. Injunctive and declaratory relief, damages and other appropriate legal and equitable relief are sought pursuant to the Title VII, THRA, Section 1981, FMLA, TPPA, and common law.

## FACTS

12. Plaintiffs are former employees of Defendant.

13. Plaintiffs are black individuals who were qualified for their jobs with Defendant. Plaintiffs worked within Defendant's Provider Enrollment Department (the "Department").

14. Under previous management, prior to Dennis Cook's assignment as Director of the Department, the overwhelming majority of Department employees were African-American (Black).

15. During a Department meeting, Dennis Cook told employees of his intention to "change the face of Provider Enrollment." Dennis Cook is a Caucasian (white) male.

16. Dennis Cook and other white members of management -- including, but not limited, to Robin Amonette and Shirley Roberts -- engaged in a (systemic) pattern of discrimination against black employees in the Department.

17. The racial composition of Department employees went from majority African-American (black) to majority Caucasian (white) since Mr. Cook became Director after a series of disparate and adverse employment actions against black employees. The large majority of new hires and promotions within the Department were given to white employees, while the overwhelming majority of terminations were of black employees. White employees almost always replaced terminated black employees. Black employees were more harshly and more frequently reprimanded by Defendant's management for conduct that white employees were less harshly and less frequently reprimanded. Qualified black employees were often rejected from career advancement opportunities (promotions, raises, etc.) in favor of lesser qualified white employees.

4

## Plaintiff Coleman

18. Plaintiff Coleman adopts verbatim paragraphs 1- 17 and all subsequent paragraphs related to individual Plaintiffs' claims, as though fully set out herein, as her individual claims are a part of the same systemic pattern of discriminatory, unlawful, and disparate treatment of similarly situated black employees within the Provider Enrollment Department.

19. Plaintiff Coleman was terminated in January 2012.

20. The purported reason for her termination was insubordination.

21. The purported reason for her discharge and other adverse job actions were pretexts for discrimination and retaliation against Plaintiff Coleman. Plaintiff (as well as others) observed white employees engage in the same or similar behavior without similar consequence.

22. Plaintiff Coleman was denied career advancement despite being one of the Department's highest performing and most knowledgeable employees. White employees of lesser qualifications were given promotions at the expense of Plaintiff Coleman, and similarly situated and qualified black applicants.

23. In 2011, Plaintiff filed a complaint with Defendant's Ethics and Compliance Department. The complaint alleged possibly illegal and certainly improper activity within the Provider Enrollment Department. Since making her complaint to Ethics and Compliance and Mr. Cook's assignment as Director, Plaintiff Coleman has repeatedly received undeserved performance criticism and reprimands; denied career advancement opportunities; and was ultimately terminated by Defendant.

24. Defendant discriminated against Plaintiff Coleman because of her race, and retaliated against her for reporting possibly illegal and unethical activities. Defendant's actions against Plaintiff Coleman were pretext for race discrimination and retaliatory in violation of Title VII, THRA, TPPA, Section 1981, and common law.

## Plaintiff Brooks

25. Plaintiff Brooks adopts verbatim paragraphs 1- 24 and all subsequent paragraphs related to individual Plaintiffs' claims, as though fully set out herein, as her individual claims are a part of the same systemic pattern of discriminatory, unlawful, and disparate treatment of similarly situated black employees within the Provider Enrollment Department.

26. Plaintiff Brooks was terminated in May 2012.

27. The purported reason for her termination was failure to meet expectations and "conduct/behavior." Prior to Mr. Cook's assignment as Director, Plaintiff Brooks had no serious history of poor behavior or job performance.

28. Plaintiff performed her job at a sufficient level throughout her employment. Plaintiff Brooks, as well as others, observed Caucasian employees with legitimate performance and conduct ineptitudes fail to be similarly reprimanded, punished, or terminated by Defendant.

29. Plaintiff Brooks was given undeserved performance criticism and reprimands, denied career advancement opportunities, and ultimately terminated. Defendant's actions against Plaintiff Brooks were pretext for discrimination and in violation of the THRA, Section 1981, and Title VII.

### Plaintiff Britton

30. Plaintiff Britton adopts verbatim paragraphs 1-29 and all subsequent paragraphs related to individual Plaintiffs' claims, as though fully set out herein, as her individual claims are a part of the same systemic pattern of discriminatory, unlawful, and disparate treatment of similarly situated black employees within the Provider Enrollment Department.

31. Plaintiff Britton was terminated in late 2011. The purported reason for her termination was related to attendance and tardiness. Plaintiff denies that attendance and tardiness related issues are the true grounds for her termination.

32. The incidents cited by Defendant as its grounds for termination should have been protected leave (time-off) under the FMLA.

33. Plaintiff was approved for intermittent FMLA leave to provide care for a family member.

34. Prior to receiving FMLA certification, Defendant failed to notify Plaintiff Britton of her FMLA rights in spite of its knowledge of her family members' serious health condition.

35. Following her FMLA certification and approval, Defendant was aware of Ms. Britton's FMLA leave and requests, yet maliciously and intentionally disregarded such request in order to have a pretextual foundation for terminating Plaintiff Britton. Defendant's actions regarding Plaintiff Britton's FMLA leave was interfering, retaliatory, and would dissuade an employee from taking such entitled leave.

36. Plaintiff Britton (as well as other Plaintiffs) observed Caucasian employees with legitimate tardiness issues fail to be similarly reprimanded, punished, or terminated by Defendant.

7

37. Plaintiff Britton was given undeserved reprimands, denied career advancement opportunities, and ultimately terminated due to her race and FMLA entitlement.

38. Defendant's actions against Plaintiff Britton were pretext for discrimination and retaliation and in violation of her rights under the FMLA, Section 1981, and common law.

## Plaintiff Puckett

39. Plaintiff Puckett adopts verbatim paragraphs 1- 38 and all subsequent paragraphs related to individual Plaintiffs' claims, as though fully set out herein, as his individual claims are a part of the same systemic pattern of discriminatory, unlawful, and disparate treatment of similarly situated black employees within the Provider Enrollment Department.

40. Plaintiff Puckett was terminated in December 2011.

41. The purported reason for his termination was related to his workplace attendance. Plaintiff denies that Defendant's asserted reasons were the true grounds for his termination. Plaintiff Puckett's managers and supervisors terminated Plaintiff Puckett in furtherance of its discriminatory aims to remove blacks from the Department.

42. Plaintiff Puckett, as well as others, observed Caucasian employees with legitimate attendance-related issues fail to be reprimanded, punished, or terminated by Defendant. Plaintiff Puckett was given undeserved performance and attendance reprimands, denied career advancement opportunities (denied several deserved promotions, one going to Jason White (Caucasian/White male)), and was terminated because of his race.

43. Defendant's actions against Plaintiff Puckett were pretext for discrimination and in violation of Section 1981.

### Plaintiff Portia

44. Plaintiff Portia adopts verbatim paragraphs 1- 43 and all subsequent paragraphs related to individual Plaintiffs' claims, as though fully set out herein, as his individual claims are a part of the same systemic pattern of discriminatory, unlawful, and disparate treatment of similarly situated black employees within the Provider Enrollment Department.

45. Plaintiff Portia was terminated in May 2012.

46. The purported reason for his termination was an alleged failure to meet performance (and productivity) standards.

47. Plaintiff denies Defendant's purported reason for his termination was the actual grounds for his termination. Plaintiff Portia (as well as others) have observed Caucasian employees with legitimate problems with performance and productivity that were not similarly treated by Defendant's management agents.

48. After making an internal complaint to Defendant's Ethics and Compliance Department concerning his supervisor, Plaintiff Portia was terminated very shortly after making the internal complaint.

49. Plaintiff Portia asserts that Defendant's grounds for the adverse actions against him (termination and other retaliatory actions) were pretext for discrimination and retaliation and in violation of the THRA, common law, and Section 1981.

### Collective Allegations

50. During Plaintiffs' employment, Defendant discriminated against them because of their race and treated them differently and less favorably in the terms, conditions, privileges and benefits of employment than they treated similarly situated employees who

9

were not black, did not take federally protected leave, or who did not oppose or report Defendant's illegal and unethical conduct.

51. Defendant discriminated against Plaintiffs through disparate treatment and/or disparate impact in disciplining and reprimanding black employees. The results of this disparate treatment were used to deny promotions to and/or discharge black employees.

52. Defendant, and its managers and supervisors, continually provided Plaintiffs less opportunity for promotions, to earn bonuses, and provided then less valuable benefits, among other acts of disparate treatment, than similarly situated white employees. The pattern and practice of discipline, reprimand, and denial of opportunity was discriminatory and adverse to the employment interest of Plaintiffs' and similarly situated employees.

53. Defendant did nothing to prevent supervisory racial harassment, discrimination, or retaliation in the workplace. Defendant's created, maintained, and condoned a racially hostile work environment. Defendant failed and refused to take prompt and effective corrective action or remedy the racially hostile and discriminatory work environment. Defendant's actions made black employees feel that nonwhites were of less value to Defendant than whites. The racial harassment of black employees in the Department was continuously severe and pervasive despite their repeated complaints, and altered the conditions of their employment.

54. Defendant terminated Plaintiffs' employment and took other adverse job actions against Plaintiffs. As a result of Defendants conduct, Plaintiffs have suffered damages.

55. Defendant failed or refused to make good faith efforts to comply with the requirements of Title VII, THRA, FMLA, TPPA, and Tennessee common law.

## CLAIMS

### Race Discrimination, Section 1981
### (All Named Plaintiffs', and Similarly Situated)

56. Plaintiff adopts verbatim paragraphs 1-55 as though fully set out herein.

57. Based on the conduct described in this Complaint, Defendant is liable for discrimination in violation of Section 1981.

58. Defendant's intentional conduct constitutes reckless indifference to Plaintiffs federally protected rights.

59. Defendant's conduct harmed and caused damage to Plaintiffs (Coleman, Brooks, Porchia, Britton, Puckett, and others similarly situated).

### Race Discrimination, Title VII
### (Plaintiff Coleman)

60. Plaintiff adopts verbatim paragraphs 1- 59 as though fully set out herein.

61. Based on the conduct described in this Complaint, Defendant is liable for discrimination and retaliation in violation of Title VII.

62. Defendant's conduct constitutes unlawful disregard and indifference to Plaintiff Coleman's federally protected rights under Title VII.

63. Defendant's conduct harmed and caused damage to Plaintiff.

64. Plaintiff reserves the right to amend this Complaint to assert additional Title VII claims as outlined in Paragraph 6.

### Race Discrimination, THRA
### (Plaintiffs Coleman, Brooks, Portia)

65. Plaintiff adopts verbatim paragraphs 1-64 as though fully set out herein.

66. Based on the conduct described in this Complaint, Defendant is liable for discrimination and retaliation in violation of the THRA.

67. Defendant's conduct constitutes unlawful disregard and indifference to Plaintiff Coleman's federally protected rights under the THRA.

68. Defendant's conduct harmed and caused damage to Plaintiffs' Coleman, Brooks, and Portia.

## TPPA
### (Plaintiff Coleman)

69. Plaintiff adopts verbatim paragraphs 1-68 as though fully set out herein.

70. Based on the conduct described in this Complaint, Defendant is liable for unlawful termination in violation of the TPPA.

71. Defendant's conduct constitutes disregard and indifference to Plaintiff's right under the TPPA.

72. Defendant's conduct harmed and caused damage to Plaintiff Coleman.

## Tennessee Common Law
### (Plaintiff's Coleman and Portia)

73. Plaintiff adopts verbatim paragraphs 1-72 as though fully set out herein.

74. Based on the conduct described in this Complaint, Defendant is liable for unlawful termination in violation of the common law of Tennessee.

75. Defendant's conduct constitutes disregard and indifference to Plaintiffs' common law rights protected by the State of Tennessee.

76. Defendant's conduct harmed and caused damage to Plaintiffs' Coleman and Portia.

## FMLA Violations
### (Plaintiff Britton)

77. Plaintiff adopts verbatim paragraphs 1-76 as though fully set out herein.

78. Based on the conduct described in this Complaint, Defendant is liable for unlawful interference and retaliation in violation of the FMLA.

79. Defendant's conduct harmed and caused damage to Plaintiff Britton.

80. The above actions described constitute unlawful FMLA interference and retaliation, which contributed to her unlawful termination from employment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the following relief:

1. Judgment and damages in amounts to be determined by the jury;
2. Back pay and damages for lost benefits;
3. Compensatory damages;
4. Front pay;
5. Punitive damages;
6. Liquidated damages;
7. Attorneys' fees and expenses;
8. Prejudgment interest and, if applicable, post-judgment interest; and
9. Such other and further legal or equitable relief to which they may be entitled.

## JURY TRIAL DEMAND

Plaintiffs hereby demand a jury trial in this action.

Respectfully submitted,

Brian C. Winfrey (BPR No. 025766)
The Winfrey Firm
2002 Richard Jones Road, Suite B-200
Nashville, Tennessee 37215
(615) 724-0844

Attorney for Plaintiff